IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORRAINE M. YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:07-CV-02749 |
| | § | |
| MICHAEL J. ASTRUE | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document No.16). Having considered the motion, administrative record, and the applicable law, the Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED, and the decision of the Commissioner of the Social Security Administration be AFFIRMED.

**I. Introduction**

Plaintiff Lorraine M. Young ("Young") brings this action pursuant to section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") granting her application for disability insurance benefits for the period of January 3, 2002 – April 16, 2004, and denying her application for disability insurance benefits thereafter.

## II. Administrative Proceedings

On August 1, 2002, Young applied for disability insurance benefits, claiming that she was unable to work as of the 1st of January, 2002, due to a diagnosis of breast cancer, which necessitated a lumpectomy, and aggravated an intermittent pain in her left shoulder (Tr. 54-56). The Social Security Administration denied her application. Young reapplied for disability insurance benefits on October 9, 2003, and her application was again denied. (Tr. 58). Young requested a hearing before an administrative law judge (ALJ), which took place April 4, 2006. The ALJ returned a decision partially favorable to Young, holding that she was entitled to disability insurance benefits from the disability date claimed in her first application – January 1, 2002 – until April 16, 2004, the date of a medical examination at which Young denied any serious complaints and after which no significant treatment continued. (Tr. 219). As a result, a September 25, 2006 disability determination revised the prior determination denying Young's disability benefits. (Tr. 148). Young submitted a request for a review of the hearing decision on April 23, 2007, which was denied on July 31, 2007. (Tr. 5). The instant appeal followed.

## III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "only to ascertain whether substantial evidence supports the [Commissioner's] decision and whether the Commissioner used the proper legal standards to evaluate the evidence." *Masterson v. Barnard*, 309 F. 3d 267, 272 (5th Cir. 2002). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405 (g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987); *see also Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler,* 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v.*

3

*Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.3d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986).

The Commissioner applies a five-step sequential process to decide disability status:

> 1. If the claimant is presently working, a finding of "not disabled" must be made;

> 2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ found that Young was capable of performing the full range of sedentary work from April 16, 2004 onwards, and was, from that date forward, not disabled within the meaning of the Act.

## V. Discussion

### A. Objective Medical Evidence

The objective medical evidence shows that Young underwent a lumpectomy for breast cancer (ductal carcinoma *in situ*) in her left breast, followed by six weeks of radiation treatment and oral chemotherapy (the drug Tamoxifen). Young also received a diagnosis of uterine fibroids, which were treated with a total abdominal hysterectomy. Subsequent to her breast cancer, Young claims that she is disabled as a result of chronic pain over her left shoulder, which limits her reach and ability to use her (dominant) left hand. She further asserts depression as a result of the treatment and the difficulties she experienced in the process of pursuing her disability insurance claim.

In November of 2001, Young had a biopsy on a mass in her left breast, performed by surgeon James Boyd in Pensacola, Florida. (Tr. 173). The pathologist report concerning the mass indicated that it was in fact carcinoma, with extensive cancerization of lobules. (Tr. 175). During the month of December, Young participated in a new patient consultation for her cancer (Tr. 237) and heard recommendations regarding management. (Tr. 196). On January 3, 2002, Young underwent surgery to remove the cancerous mass and the scar from her prior biopsy. (Tr. 167). Young's follow-up appointment on March 3, 2002, indicates that due to a family emergency she wished to discontinue her radiation treatment, but she was encouraged to continue.

Follow-up appointment notes from July 3, 2002, indicate that Young "denies complaints and feels well," though her "left upper extremity range of motion was mildly discomfort [sic] due to previous trauma to her left shoulder." (Tr. 192). Another follow-

6

up appointment with Dr. German Herrera on July 19, 2002, indicates normal recovery and does not mention residual pain. (Tr. 232). As of July 29, 2002, Young's physician, Joanne Bujnoski confirmed, via mammogram, that no evidence of malignancy remained and, overall, Young's breast exam was unremarkable. (Tr. 191). On September 30, 2002, Young was admitted to the hospital for another surgery, a total abdominal hysterectomy, as a result of very enlarged uterine fibroids. (Tr. 176-78). Young's follow up appointments continued with little change. A November 22, 2002 follow up with Herrera yielded consistent reports. (Tr. 231).

A January 2, 2003, follow up note from Sacred Heart (the hospital at which all of the above-mentioned treatment occurred) states that Young was 8 months post-radiotherapy and a year post surgery for carcinoma, and notes that there was "no limitation of upper range of motion, however, abduction was discomfort [sic] secondary to previous trauma and her surgical axillary dissection." (Tr. 188). At Young's follow up appointment May 23, 2003, again with Dr. Herrera, Young complained of an intermittent pain over her upper left extremity. (Tr. 229). A questionnaire sent to Dr. Herrera on October 13, 2002, requesting more information for the purposes of evaluating Young for disability resulted in Herrera's assessment that Young suffered no mental impairment.

At Young's next follow up appointment, on November 21, 2003, Dr. Herrera noted that while Young continued to suffer from anxiety and depression, she declined medication, and that her condition was otherwise normal. (Tr. 225). On January 9, 2004, Dr. Herrera prescribed Vioxx for Young's left shoulder pain (Tr. 223), but at her January 16, 2004, appointment, Young reported no improvement. Dr. Herrera diagnosed probable

tendonitis or bursitis. (Tr. 221). Also, as part of the January 16 follow up appointment, Dr. Herrera ordered X-rays of Young's shoulder, the results of which revealed no evidence of fracture, dislocation, separation, or other type of acute pathology. (Tr. 222).

On February 16, 2004, psychologist Susan A. Danahy performed a psychological evaluation for purposes of a disability assessment. (Tr. 202). Dr. Danahy noted that Young drives herself some, was neatly dressed, climbed the steps to the office, and demonstrated no evidence of difficulty with gross or fine motor control. In her self-assessment that day, Young described her "chief complaint" saying, "Oh, WOW! The number one thing is that I'm left-handed and I had cancer on my dominant side." (Tr. 199). Dr. Danahy reported that when she tried to "pin [Young] down" about her specific emotional problems, she could only articulate that she has "big time pain" and that she is "emotionally stressed out." (Tr. 199). Young further asserted that she did not want drugs or therapy to address her emotional difficulties because she did not want to be dependent on drugs and prefered to manage her problems by herself. Young also stated during this evaluation that she quit her medical records job because she was "burned out" and because she was having problems with her left shoulder. (Tr. 201). Based on her interactions with Young, Dr. Danahy opined: "In summary, Ms. Young presents with a combination of medical and affective problems. She states that her depression is primarily secondary to treatment for breast cancer." (Tr. 201).

On February 25, 2004, Dr. Jane Cormier performed a psychiatric evaluation of Young, stating that Young had affective disorders, but that the impairment was not severe. (Tr. 203-15). In rating functional limitations, Dr. Cormier indicated that there

were "none" in the categories "restriction of activities of daily living" and "episodes of decompensation," and "mild" in "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence, or pace." (Tr. 215). Dr. Cormier additionally indicated that there was "evidence of some depression... claimant did present with depressed mood/sad affect... however, her cognitive function is intact and intellectual functioning appears to be at least in borderline range," further determining that Young's social functioning was adequate and that her impairments were not severe. (Tr. 215).

Young's follow up appointment with Dr. Herrera, which took place April 16, 2004, served as the marker that Young's condition was now resolved, given that her assessment was again normal except for the persistent shoulder pain complained of by Young, but was not corroborated by X-ray. (Tr. 219). A psychological evaluation, performed by J. Patrick Peterson on May 19 of 2004, concluded that Young's impairments were not severe, and stated the same "none" or "mild" categorizations of impairment as the prior evaluation completed by Dr. Jane Cormier three months earlier. (Tr. 239).

Dr. Mary Seay performed a residual physical evaluation on June 10, 2004, which indicated that Young was limited by pain in her shoulder, but also noted that Young's "symptoms are partially credible." (Tr. 258). Another mammogram was performed September 27, 2004, and returned normal results. (Tr. 263). An October 15th follow up appointment with Dr. Herrera again yielded a consistent report of no ongoing complaints other than the shoulder pain and moderate depression. (Tr. 279).

On March 3, 2005, Young had her one year appointment with Dr. Herrera, at which time Young reiterated her complaint of pain over the left shoulder. Similarly, Young repeated her complaint at the follow up appointment on April 6, 2005, but again refused additional medications. (Tr. 265).

Dr. Joanne Bujnoski performed Young's follow up appointment on September 27, 2005. Young denied major complaints but again stated that she had a sharp, fleeting pain the day before while packing to move her house. Dr. Bujnoski noted that Young may have been "overdoing it," apparently in reference to her activity level while packing, thereby exacerbating the pain. (Tr. 263).

A second set of X-rays were performed on Young's shoulder as part of her March 10, 2006, appointment with Dr. Herrera. The X rays showed no evidence of trauma. (Tr. 274-75).

Young underwent a psychological evaluation on June 28, 2006, which was performed by Dr. Richard Doll. (Tr. 267). This evaluation indicated that Young performed in the mild mental retardation range, but Dr. Doll also noted that Young's "level of persistence, concentration, and motivation were severely lacking and warrant these scores to [be] considered invalid." (Tr. 268). Dr. Doll determined that Young had a fair capacity to do work related activities despite her diagnosis of mood disorder and a "bad right shoulder." (Tr. 270).

The objective medical evidence in the record, particularly the follow up appointment on April 16, 2004, cited by the ALJ as the definitive termination of Young's disability, does not support a conclusion that Young is unable to engage in any type of

gainful employment as a result of her breast cancer or intermittent pain over her left shoulder. Although Young's reach on the left side may have been compromised, there is no objective medical evidence suggesting that this limitation would render her unable to engage in any type of gainful employment. The condition which led to her disability – severe breast cancer and subsequent treatment – has been effectively resolved, and her medical improvement regarding that condition is all but complete. The objective medical evidence factor weighs in favor of the ALJ's decision that Young was not, after April 16, 2004, disabled within the meaning of the Act.

### B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions or treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Shweiker*, 653 F.2dd 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."). In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must by supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Shweiker*, 660 F.2d 1078 (5th Cir.

1981). Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

None of the medical opinions submitted support a conclusion that Young's disability continued after April 16, 2004, and therefore the medical evidence supports the ALJ's conclusion that Young is no longer disabled. There are no formal expert medical opinions in the record to speak of, apart from the disability evaluations performed by various psychologists and physicians set forth above. The ALJ wrote:

> With respect to the steps listed above that the Administrative Law Judge must follow in evaluating disability, the claimant has not engaged in substantial gainful activity since January 3, 2002. Between January 3, 2002 and April 16, 2004, the claimant had severe breast cancer and residuals of treatment including surgery, radiation therapy, and hormone withdrawal. Her impairment did not meet or equal any impairment listed in Appendix 1. Beginning January 3, 2002, and for a reasonable period of time thereafter during the claimant's treatment, she was limited to significantly less than a full range of sedentary work and she could not have returned to her past work or engage[d] in any other work that existed in the national economy. The claimant was under a disability that began on January 3, 2002.
>
> After January 3, 2002, the claimant received appropriate treatment. The reports from her [treating] sources, particularly Dr. Herrera and Dr. Bunjoski, are convincing that the claimant was disabled for at least 12 consecutive months. Those reports are further convincing that the claimant did medically improve. Effective April 16, 2004, the date Dr. Herrera noted minimal complaints related to cancer and that the claimant's treatments had helped, the record shows that the claimant had not engaged in substantial gainful activity. Her impairment did not meet or equal any impairment listed in Appendix 1. Medical improvement had occurred, and such improvement was related to the ability of the claimant to work. No exception to the medical improvement standard applies in this case.
>
> The record, since April 16, 2004, describes no ongoing and significant medical treatment or complaints, but to afford her the benefit of any doubt the Administrative Law Judge finds that, effective April 16, 2004, the claimant

continued to have a medically severe impairment, residuals of breast cancer and treatment. However, she had regained the residual functional capacity to sit for six to eight hours in a workday, and to stand and walk for up to two hours in a workday. She could lift small objects weighing not more than 10 pounds. She had no significant postural, manipulative, communicative, or environmental restrictions, and she no longer had severe or moderate depression or any mental impairment that significantly limited her abilities to sustain the mental demands of work-related activities...

The Administrative Law Judge finds that the claimant was under a "disability" as defined in the Social Security Act, from January 3, 2002, until April 16, 2004, but not thereafter. The ongoing medical evidence establishes that cause exists to reopen the prior determinations and denial determinations of November 1, 2002, are hereby reopened and the claimant is granted benefits based upon the applications effectively filed on July 31, 2002.

In finding that the claimant was not disabled after April 16, 2004, the Administrative Law Judge carefully considered the claimant's subjective allegations pursuant to Social Security Administration Regulations Nos. 4 and 16 (20 CFR 404.1529 and 416.929), which require consideration of subjective symptoms.

The Regulations require consideration of daily activities. The record is convincing that the claimant, from January 3, 2002 until April 16, 2004, was limited to minimal activities. However, her testimony shows that she did improve with proper treatment and that, since April 16, 2004, no medical evidence or other evidence suggests she cannot sustain ordinary daily activities.

The Regulations require consideration of the location, duration, frequency, and intensity of symptoms. In this case, the evidence prior to April 16, 2004 indicated that the claimant was under ongoing therapy, with radiation and later for hormone withdrawal, but neither her testimony nor the medical evidence since April 16, 2004 supports any continuing and significant symptoms such that sedentary work would be precluded...

The claimant's allegations of continuing disability after April 16, 2004 are not credible in light of her documented improvement, in light of the subsequent negative testing, and in light of the comments of Dr. Bujnowski in September, 2005, in which she described the claimant as denying major complaints. (Tr. 15-18).

Upon the record, the ALJ's decision is consistent with the medical records and opinions of the medical experts, and the diagnosis and expert factor weighs in favor of the ALJ's decision.

### C. Subjective Evidence of Pain

The third element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render her disabled. *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985). The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence or a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42. U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-619 (citing *Harrel v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ,

who has had the opportunity to observe the claimant. *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

At the administrative hearing, Young testified about her health and its impact on her daily activities. She offered no testimony or corroboration from her family or friends with respect to her complaints about her condition. Young testified to a fleeting pain on her left side, and when asked what "brought it about" by the ALJ, she answered "I just get real bad muscle spasm in that side from time to time." (Tr. 295). When asked why she does not work, Young responded that she is "not capable of working," and when pressed for an explanation answered, "the kind of work I do I can no longer do, so who is going to hire me to do anything else in my condition?" (Tr. 295). When asked about her reported depression, Young testified that she is "just making the best of it". (Tr. 295). The ALJ inquired as to whether Young's primary physician, Dr. Herrera, had ever "suggested... that [she] might want to try working." (Tr. 296). Young asserted that Dr. Herrera had not, and that in fact "that's not for him to do because he's not feeling my pain," but offered no further evidence concerning the degree or severity of the pain, or the effect it has on her daily life. Young identified no other health problems that would prevent her from working.

The objective evidence in the record supports the ALJ's conclusion that Young regained the residual functional capacity to perform the full range of sedentary work as of her April 16, 2004, medical evaluation. Her ongoing assertions of pain have not resulted in a single finding of impairment by a medical professional involved with her

case, and no medical explanation for her pain is evidenced in her numerous follow-up appointments, which included X-ray examinations.

It is within the province of the ALJ to make credibility determinations. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Based on the ALJ's reasoned credibility determination, and the conclusion that such determination is supported by substantial evidence, the ALJ's determination that Young's subjective complaints are not fully credible must stand. In light of the medical records submitted, the subjective evidence of pain factor also supports the ALJ's decision.

### D. Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial and gainful work which exists in the national economy. 42 U.S.C § 423 (d)(2)(a).

The record shows that Young was 45 years old on the date of the hearing before the ALJ, that she completed a twelfth grade education, and that she can read and write. (Tr. 291). In his decision, the ALJ concluded that Young had regained the residual functional capacity to perform the full range of sedentary work, but that she was unable to return to her past relevant work. (Tr. 19). Most immediately prior to her diagnosis, Young had worked as a private sitter for the elderly, as a file clerk, and as a preschool teacher, all of which she testified were "physically heavy" positions. (Tr. 292). Young

testified that as a file clerk, she regularly lifted and carried heavy files weighing ten pounds. Young further explained at the hearing that her work as a sitter required her to assist elderly patients in moving to and from bed, and feeding and clothing them. (Tr. 293). The evidence of record supports the ALJ's finding that Young could not return to her previous work, but could perform a full range of sedentary work. Although there is no vocational expert testimony in the record and the ALJ did not comment on this factor directly, there is substantial evidence in the record to support the ALJ's conclusion that Young can perform a full range of sedentary work, and because Young had no nonexertional impairments, the ALJ did not err in applying the applicable grid rules 201.21 and 201.22, which direct a finding of not disabled. As such, this factor supports the ALJ's decision.

**V. Conclusion and Recommendation**

      Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Young was no longer disabled within the meaning of the Act as of April 16, 2004, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, the Magistrate Judge

      RECOMMENDS that the Defendant's Motion for Summary Judgment (Document No. 16) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72 (b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failiure to file objections within the ten day period bars an aggrieved party from attaching conclusions of law on appeal. *Douglass v. United States Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 2nd day of July, 2008.

_____
Frances H. Stacy
United States Magistrate Judge